IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ROSEMARY JONES RUSHING,** **PLAINTIFF**

v. **CIVIL ACTION NO. 4:14-CV-149-SAA**

**CAROLYN W. COLVIN,**
**COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

**MEMORANDUM OPINION**

This is an appeal under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's decision denying plaintiff Rosemary Jones Rushing's application for a period of disability (POD) and disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and supplemental security income (SSI) under Title XVI of the Act. Plaintiff filed her initial application for benefits on December 6, 2011, with an alleged disability onset date of April 28, 2011. Docket 10, p. 12. The agency denied plaintiff's disability applications initially on January 17, 2012 and upon reconsideration on March 28, 2012. Docket 10, p. 48-55, 62-63. Plaintiff then requested a hearing, which an Administrative Law Judge ("ALJ") held on May 21, 2013. Docket 10, p. 24-43. The ALJ issued an unfavorable decision on June 27, 2013 (Docket 10, p. 9-23), and the Appeals Council denied plaintiff's request for a review on August 22, 2014, Docket 10, p. 1-6. Plaintiff timely filed this appeal from the decision and it is now ripe for review.

Because both parties consented to have a magistrate judge conduct all proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

Plaintiff was born February 6, 1973 and was 39 years old at the time of the ALJ hearing. Docket 10, p. 28, 107, 109. She has a high school education and past relevant work experience as a sorter and a certified nursing assistant. Docket 10, pp. 28-30. Plaintiff alleged a disability onset date of April 28, 2011. Docket 10, p. 12, 107-09. Plaintiff later attempted to amend her alleged onset date to November 16, 2011 (Docket 10, p. 133) due to having performed some work with a temp agency after her alleged onset date however, that work had already been determined to qualify as an unsuccessful work attempt, which does not count against the plaintiff and, in fact, may be considered as proof of disability. *See Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).

In evaluating plaintiff's disability, the ALJ determined that plaintiff suffered from "severe" impairments, including degenerative disc disease of the lumbar spine and obesity, but that those impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926). Considering those "severe" impairments, the ALJ concluded that plaintiff retained the Residual Functional Capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) "except she should not climb ropes, ladders, or scaffolds . . . [and] should only occasionally climb ramps and stairs and only occasionally balance, stoop, crouch, crawl, and kneel." Docket 10, p. 16.

The ALJ held that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible" because "the evidence of record [did] not support such claims." Docket 10, p. 17. Further, the ALJ afforded "little weight" to the plaintiff's treating physician, Dr. Brock, because the doctor's "conclusions as to limitation[s] are not supported by his own observations that the claimant has had a normal gait for the previous few

2

years or by objective medical findings from MRI and CT scans." Docket 10, p. 18.

After evaluating the evidence in the record, the ALJ held that plaintiff was unable to perform the requirements of her past work as a certified nursing assistant and a sorter. Docket 10, p. 16-18. However, based on vocational expert (VE) testimony, the ALJ concluded that plaintiff retained the RFC to perform light work and was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Docket 10, p. 18-19. The VE testified that, with the limitations set out by the ALJ, the plaintiff would be able to perform jobs such as counter attendant, locker room attendant, and room service clerk. Docket 10, p. 19. Therefore, the ALJ concluded plaintiff was "not disabled" under the Act. Docket 10, p. 19-20.

On appeal, the plaintiff asserts the ALJ erred in reaching his disability determination by improperly weighing the opinion of plaintiff's treating physician and, instead, giving significant weight to a non-examining, non-treating consultative physician's assessment. Docket 14, pp. 7-18. The plaintiff also asserts that the ALJ ignored the Treating Physician Rule, failed to fully develop the record, and failed to consider the plaintiff's severe impairment of obesity in conjunction with her other impairments in reaching his determinations. Docket 14, pp. 19-28. The court finds the ALJ improperly relied on the opinion of a non-examining consulting physician instead of the plaintiff's treating physician without applying proper legal standards.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; 416.920. Plaintiff has the burden throughout the first four steps of the process to prove disability and if she is successful in sustaining her burden at each of the first four steps, the burden then shifts to the Commissioner at step five. *See Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999). First, plaintiff must prove she

is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b); 416.920(a)(4)(i). Second, the plaintiff must prove her impairment(s) are "severe" in that they "significantly limit [her] physical or mental ability to do basic work activities . . .." 20 C.F.R. § 404.1520(c); 416.920(a)(4)(ii). At step three the ALJ must conclude plaintiff is disabled if she proves her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010). 20 C.F.R. § 404.1520(d); 416.920(a)(4)(iii). If plaintiff does not meet this burden, at step four she must prove she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(e); 416.920(a)(4)(iv). Finally, at step five, the burden shifts to the Commissioner to prove, considering plaintiff's RFC, age, education, and past work experience, that she is capable of performing other work. 20 C.F.R § 404.1520(g); 416.920(a)(4)(v). If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove she cannot, in fact, perform that work. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

### III. STANDARD OF REVIEW

On appeal, the court considers whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). However, an ALJ "is not at liberty to make a medical judgment regarding the ability or disability of a claimant . . . where such inference is not warranted by clinical findings. *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV. DISCUSSION

In evaluating the plaintiff's disability claim, the ALJ proceeded through the Social Security Administration's five-step evaluation process. 20 C.F.R. 404.1520(a); 20 C.F.R. 416.920(a); *see also* Docket 10, p. 9-23. There, the ALJ determined that plaintiff met the insured status requirements of the Social Security Act through September 30, 2016 and had not engaged in substantial gainful activity since the alleged onset date. Docket 10, p. 14. The ALJ also determined that plaintiff suffered from "severe" impairments of degenerative disc disease of the lumbar spine and obesity. Docket 10, p. 14. At step three, however, the ALJ concluded that claimant's impairments did not meet or medically equal the severity of a listed impairment, most notably Listing 1.04 (Disorders of the spine). Docket 10, p. 14-16. At step four the ALJ determined plaintiff had the residual functional capacity (RFC) to perform light work but was

5

unable to perform the requirements of her past work as a certified nursing assistant or a sorter. Docket 10, p. 16-18. Finally, at step five, the ALJ determined plaintiff could perform jobs that exist in significant numbers in the national economy. Docket 10, p. 18-19.

Plaintiff argues on appeal that the ALJ improperly discounted the opinion of her treating physician, Dr. Charles Brock, Jr., in violation of 20 C.F.R. § 404.1527. Docket 14, pp. 7-18. More specifically, plaintiff claims the ALJ failed to apply proper legal standards when he elected to assign her treating physician's opinion little weight but instead assigned significant weight to the DDS consultative examiner's opinion. Docket 14, pp. 7-18. Commissioner responds that the ALJ's decisions regarding the relative weight given to the opinions of Dr. Brock and the DDS consultative examiner, Dr. Madena Gibson, were substantially justified. Docket 15, pp. 4-15. The Commissioner contends Dr. Brock's opinion was not supported by his own medical records and that good cause was shown to not grant Dr. Brock's opinion significant weight because his May 2013 medical source statement was "brief and conclusory." Docket 15, pp. 4-15.

The law is clear. Unless there is contrary medical evidence, an ALJ must afford a treating physician's opinion significant weight in making his determination of disability. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). While a claimant's treating physician's opinion is entitled to great weight, an ALJ can discount the weight of a treating physician's opinion for good cause. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995), citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). "[A]n ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Before declining to give a treating physician's opinion controlling weight there are several factors an ALJ must consider:

6

> (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.

*Newton*, 209 F.3d at 456; *see also* 20 C.F.R. § 404.1527(d)(2). When an ALJ elects not to grant a treating physician's opinion controlling weight he must provide appropriate explanations. *See Newton*, 209 F.3d 448; *see also* 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-5p.

In this case, the ALJ reviewed Dr. Brock's records and medical source statement from May 2013 and declared his reasons for not following his opinion. Docket 10, p. 16-18. However, the ALJ did not follow the criteria laid out in *Newton*. Instead, he considered Dr. Brock's opinion and discussed the records but ultimately made conclusory determinations that the doctor's opinion was not supported by the objective medical evidence or the doctor's "own observations." Docket 10, p. 16-18.

The ALJ found that Dr. Brock's conclusions were "patently inconsistent with his own examination findings throughout 2012 and early 2013," and "not supported by his own observations that the claimant has had a normal gait for the previous few years or by objective medical findings from MRI and CT scans." Docket 10, p. 21. Regarding the plaintiff's gait, the ALJ fixated on the fact that Dr. Brock's records reflected that the plaintiff had almost always exhibited "normal gait" throughout her treatment history. Docket 10, p. 14-19. The ALJ referred to this observation no less than five times in his decision and ultimately used it to substantiate his decision not to grant significant weight to Dr. Brock's opinion. Docket 10, p. 14-19.

The ALJ further justified his decision to give Dr. Brock's opinion little weight by finding

7

that his opinion was unsupported "by objective medical findings from MRI and CT scans." Docket 10, p. 18. However, an April 2013 CT scan of the lumbar spine revealed spinal issues. The scan revealed, "[d]egenerative disc disease L5-S1 including minimal grade 1 anterolisthesis of L5 on S1." Docket 10, p. 283. Similarly, an MRI from May 2012 revealed "[b]ilateral pars interarticular defects . . . at L5-S1 with grade 1 anterior listhesis of L5 on S2 . . . [as well as] disc desciccation with mild disc bulge . . . [and] severe right and moderate left neuroforaminal stenosis." Docket 10, p. 319-20. Despite these objective test results, however, the ALJ claimed Dr. Brock's opinion was unsubstantiated by objective medical findings.

Instead, he elected to grant significant weight to the opinion of a non-examining DDS consultative physician, Dr. Madena Gibson, who completed only an RFC assessment form in January of 2012—before both the MRI and CT scans in question. Docket 10, pp. 17-18, 255-62. The ALJ assigned her opinion "significant weight" because it was "consistent with Dr. Brock's actual observations of function upon examination, including normal gait." Docket 10, p. 17-18. Furthermore, in defense of the ALJ's decision regarding weights given to the opinions of Drs. Brock and Gibson, the Commissioner asserts that Dr. Brock's medical source statement was "just the kind of 'brief and conclusory' statement that the Fifth Circuit has indicated that an ALJ has good cause to not accord controlling weight." Docket 15, p. 12-13. The Commissioner's reliance upon Dr. Gibson's only contribution in this matter is paradoxical considering that, at best, Gibson's RFC assessment not only was based on incomplete medical records, but also it contains little more evaluative information than Dr. Brock's medical source statement – which was both more recent and based on a treating relationship with the plaintiff spanning many years.

The undersigned finds that the ALJ has clearly failed to apply the proper legal standards, and his decision is therefore not substantially justified. In declining to give the plaintiff's treating

8

physician controlling weight without performing the required analysis under *Newton*, the ALJ committed reversible error which requires remand. *Newton*, 209 F.3d at 456. If that error alone were not enough for remand, the ALJ also erred by making medical conclusions about the plaintiff's spinal conditions from record observations regarding the plaintiff's observed gait and by concluding that Dr. Brock's opinion was unsupported by the objective medical findings although MRI and CT tests revealed spinal issues only a medical professional would be qualified to interpret. For these reasons, the undersigned finds that the decision of the Commissioner should be remanded for further proceedings in accordance with this opinion.

## V. PLAINTIFF'S REMAINING ARGUMENTS

Though plaintiff also asserts other errors committed by the ALJ, the court need not address the merits of those remaining arguments at this time because this action is remanded for further consideration.

## VI. CONCLUSION

After review of the evidence presented, this court finds the ALJ's opinion was not supported by substantial evidence and did not uphold proper legal standards. Therefore, the matter must be remanded for further determination consistent with this opinion. A final judgment in accordance with this memorandum opinion will issue this date.

This the 11th day of June, 2015.

    /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE